## BEIDLER & BOOKMYER, Inc., v. UNIVERSAL INS. CO.

### No. 147.

Circuit Court of Appeals, Second Circuit.

Jan. 31, 1944.

Greenhill & Greenhill, of New York City (Simon Greenhill and Joseph Greenhill, both of New York City, of counsel), for plaintiff-appellant Beidler & Bookmyer, Inc.

Bigham, Englar, Jones & Houston, of New York City (Francis X. Nestor, of New York City, of counsel), for defendant-appellee Universal Ins. Co.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is the second action between the plaintiff, an insurance broker, and the defendant, an insurance company, for commissions earned under policies which the plaintiff procured and placed with the defendant. The first action dealt with commissions alleged to be due the plaintiff under an open marine policy No. 12703. The District Court, 46 F.Supp. 806, granted summary judgment in that action dismissing the complaint, which we affirmed on appeal. Beidler & Bookmyer v. Universal Ins. Co., 134 F.2d 828. The second action, being the one with which we are here concerned, relates to commissions claimed to be due under war risk policy No. W. R. 12703. The court below granted summary judgment for the defendant dismissing the complaint, from which the plaintiff now appeals. We think the judgment was right and should be affirmed.

The present action is to recover damages claimed to have been sustained by the plaintiff through the failure of the defendant to pay broker's commissions accruing after August 5, 1941, under policy No. W. R. 12703. That policy covered war risks of the Mac-Lac Kasebier Chatfield Corporation (hereinafter called Mac-Lac) and was a companion or supplemental policy to an original basic policy No. 12703 issued by the defendant on January 17, 1932. The basic policy covered marine perils and by an endorsement thereon war risks as well

until the latter risks were exluded from it on September 18, 1939, by cancellation of the war risk endorsement. After the cancellation of the war risk endorsement, the defendant issued war risk policy No. W. R. 12703 on December 19, 1938, covering only war risks upon shipments of Mac-Lac under marine policy No. 12703 on vessels sailing on or after September 19, 1938. This insurance was subject to cancellation by either party upon 48 hours notice. The war risk policy was issued after McClintock, the president of Mac-Lac, had been notified of the cancellation of the endorsement and told by the plaintiff's president that it would be best to secure a policy covering war risks only. Later, on October 5, 1938, defendant's general agents informed McClintock that defendant was prepared to issue to its "open policy holders contracts covering War Risks on such shipments as we insure marine risks". The war risk policy No. W. R. 12703 was thereafter issued December 19, 1938. It provided that it should cover only those shipments insured against marine risks under marine policy No. 12703 and that "the description of such shipments, the valuations thereof and the designation of the overseas Vessels on which they are to be carried and of the ports of loading and discharge, as reported under the said Policy against marine risks, shall be deemed incorporated herein."

War Risk policy No. W. R. 12703 also provided:

"8. It is agreed that the reports of shipments made under the Policy against marine risks mentioned above shall be deemed to be reports under this Policy also, and the Assured agrees to pay premiums on such shipments under this Policy at the current war risk rates of this Company.

"9. It is agreed that this Policy is a separate and wholly independent contract and is not subject to any terms or conditions of the Policy against marine risks above mentioned (whether physically attached thereto or not) except as such terms or conditions shall have been expressly incorporated herein by reference."

After the parties had proceeded under the two policies Marine No. 12703 and War Risk No. W. R. 12703 for more than two years, MacLac's president McClintock wrote the defendant on August 5, 1941: "We hereby appoint Messrs. Boynton Brothers & Co., of Perth Amboy, New Jersey, as of today's date, brokers of record on our ocean cargo policy #12703."

On August 6, 1941, the defendant's general agents wrote the plaintiff the following letter referring to the previous letter of August 5, 1941:

"August 6, 1941

"Beidler & Bookmyer, Inc.
234 West 44th Street
New York City
—The Mac-Lac Company, Inc.—
Policy No. 12703
Universal Insurance
Gentlemen:

We are today in receipt of a letter from this assured dated August 5th advising us that they have appointed others their Broker of Record under the above policy effective as of August 5th.

This is for your information.
Very truly yours,
Talbot, Bird & Co., Inc.
J. J. Stanton
Assistant Secretary."

The marine policy provided that Mac-Lac should report all import shipments to Beidler & Bookmyer, Inc. for transmission to the defendant's general agents. The war risk policy by incorporating these terms by reference made them its own.

■ In the action by Beidler & Bookmyer, Inc. for commissions on the marine policy No. 12703, we held that Mac-Lac had no contract with Beidler & Bookmyer, Inc. and could, therefore, exercise its privilege of cancelling the policy although its sole purpose was to terminate the right of Beidler & Bookmyer, Inc. to earn future commissions under that policy. We also held that the letter of August 5, 1941, from the assured to the insurance company meant that the assured would cancel the policy if the insurer did not consent to the change of brokers and was equivalent to a cancellation of the policy so far as the brokers were concerned and a termination of the right to premiums under the policy on which their claim for commissions rested. Beidler & Bookmyer, Inc., v. Universal Ins. Co., 2 Cir., 134 F.2d 828. That Mac-Lac had a right to change its brokers at will is well-settled. Clinchy v. Grandview Dairy, Inc., and Fidelity & Casualty Co. of New York, 283 N.Y. 39, 27 N.E.2d 425.

■ The plaintiff contends that the letters of August 5 and 6, 1941, which refer in terms to the marine policy only, indicate that there was no termination of the plaintiff's status as broker in respect to the war risk policy, and that even when taken with

McCormick's later oral statements, left the question of the plaintiff's continuance as broker a matter for submission to a jury rather than for determination upon a motion for summary judgment. But we are convinced that the proofs do not justify any reasonable doubt that the letters were intended to eliminate the plaintiff as broker in respect to the war risk as well as the marine policy. In the first place it is highly improbable that plaintiff's services would have been retained in connection with one policy, and dispensed with in the other. Moreover, even if the letters in themselves left plaintiff's status in doubt, the subsequent acts of all concerned made it clear that both polices were involved in the substitution of brokers. When notified of the substitution plaintiff's president made no protest. Likewise plaintiff no longer submitted or attempted to submit provisional or final notices of shipments, except in two instances where notices were inadvertently sent to it by an employee of Mac-Lac, who was unaware that McClintock had discharged the plaintiff as broker and designated Boynton Bros. & Co. to act as such in the future. That these two notices were a mere blunder is demonstrated by the fact that they purported to be given under the marine as well as the war risk policy although there is no claim that the plaintiff remained broker under the marine policy. Moreover, shortly after the letter to plaintiff by defendant's agents notifying it that Mac-Lac had substituted Boynton Brothers & Co. Inc. for plaintiff as broker, plaintiff was informed by McClintock that he was "putting all * * * brokerage insurance in the hands of one broker". Plaintiff's president, Keyser, not only gave the foregoing as the substance of McClintock's declaration to him but also said that McClintock stated "that the plaintiff had made enough money on the account and that was all there was to it."

Upon the above showing we see no substantial ground for supposing that the relations between Mac-Lac and the plaintiff were not completely severed in August, 1941. The two policies were closely interlocked by the arrangement for the joint use of identical notices of shipment both for the marine policy and the war risk policy. The policies were separate documents only for business convenience. To suppose that the plaintiff was retained as broker for the war risk policy after Boynton Brothers & Co. had been engaged for the marine policy is beyond credulity, par-

ticularly after McClintock had expressed an intention of putting "all * * * brokerage insurance in the hands of one broker." The plaintiff's entire case rests on the failure of McClintock and defendant's agents to refer to war risk policy No. W. R. 12703 in the letters of August 5th and 6th, 1941. If McClintock was forgetful or even unaware of the fact that there were two policies and thought that all risks were still included in the basic policy, plaintiff's claim would not have the slightest substance for it would be certain then that McClintock was discharging the plaintiff as broker in the only policy that he believed was outstanding.

The judgment for the defendant is affirmed.